UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TRI-TOWNSHIP AMBULANCE SERVICE,
SHEILA WHITT, and AUDREY PARKER,

                Plaintiffs,

v.                                   Case Number 08-14622-BC
                                   Honorable Thomas L. Ludington

NORTHEAST MICHIGAN MEDICAL
CONTROL AUTHORITY, DEBORAH
DETRO-FISHER, and KERWIN FARMER,

                Defendants.
_____/

## ORDER HOLDING IN ABEYANCE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, DIRECTING SUPPLEMENTAL BRIEFING, AND SETTING HEARING

      On October 30, 2008, Plaintiffs Tri-Township Ambulance Service ("TAS"), Sheila Whitt ("Whitt") and Audrey Parker ("Parker," collectively "Plaintiffs") filed suit against Defendants Northeast Michigan Medical Authority ("NMMCA"), NMMCA's Director, Deborah Detro-Fisher (the "NMMCA Director"), and NMMCA's Medical Director, Dr. Kerwin Fisher (the "NMMCA Medical Director"). According to the complaint, TAS had transported patients by ambulance between medical facilities. *See generally* dkt. # 1. Plaintiffs allege that Defendants have improperly enforced a state regulation by requiring ambulance service providers to obtain a geographically specific license from Michigan's Department of Community Health ("MDCH") prior to permitting inter-facility transfers within Defendants' jurisdiction. TAS, licensed by the MDCH to operate within the jurisdiction of the Otsego County Medical Control Authority, contends that the misinterpreted regulation restrains it from continuing to service a facility in NMMCA's jurisdiction. Whitt alleges that the interpretation has consequently deprived her mother, Parker, of TAS's medical transport services. Finally, Plaintiffs allege that Defendants' conduct related to the denial of a

license has violated, inter alia, their rights under the Fifth and Fourteenth Amendments of the United States Constitution.

Along with the complaint, Plaintiffs filed a motion for a temporary restraining order and preliminary injunction. Dkt. # 2. On November 3, 2008, the Court denied Plaintiffs' request for temporary restraining order on the basis, inter alia, that Plaintiffs had not demonstrated irreparable harm. Dkt. # 9. On November 18, 2008, the Court held a status conference to organize the evidentiary issues that the parties seek to present concerning the merits of a preliminary injunction. The parties did not present any proofs or arguments. On December 8, 2008, Defendants filed a motion to dismiss the complaint.

A

The MDCH oversees and orchestrates "health policy and management of the [State of Michigan's] publically funded health service systems." Department of Community Health, http://www.michigan.gov/mdch (follow "About the Michigan Department of Community Health" hyperlink). Approximately two million Michigan residents receive services from the MDCH annually, including Medicaid recipients and mental health services. *Id.* In addition, the MDCH coordinates with county and regional agencies to promote public health and safety. *Id.* Under this authority, the MDCH and regional agencies regulate emergency medical services.

Generally, the Emergency Medical Services Act (the "Act"), Mich. Comp. Laws § 333.20901, *et seq.,* and MDCH regulations, Mich. Admin. Code r.§§ 325.22101 to 325.22217, provide the framework for the licensing of life support ambulance services. The Act provides that the MDCH shall designate authority to medical control authorities for local regulation of health services, including ambulance providers. Mich. Comp. Laws § 333.20918(1). A medical control

authority is administered by hospitals located within its geographical territory. *Id.* at § 333.20918(2). The hospitals select an advisory board, which appoints a medical director that "is responsible for the medical control for the emergency medical services system" operated in the medical control authority's jurisdiction. *Id.* at § 333.20918(4). An ambulance provider, is accountable to the medical control authority where the agency is licensed to operate. *Id.* at § 333.20918(6); § 333.20921 (1)(c).

In addition, a medical control authority "establish[es] written protocols for the practice of life support agencies . . . ." *Id.* at § 333.20919(1). With respect to protocols, the Act provides that the medical control authority shall provide any "affected participant" an opportunity to request the medical control authority to review the decision and the affected party retains the right to appeal an adverse decision to the emergency medical services coordination committee for the state ("Statewide Committee"). *Id.* at § 333.20919(4). A similar procedure exists for protocols adopted by the MDCH. *Id.* at § 333.20919(5-7).

The Act also requires ambulance providers to be licensed by the MDCH and provides the MDCH shall issue an ambulance operator license to any party that submits a "proper application" that satisfies the rules promulgated by the MDCH. *Id.* at § 333.20920(1-5); *see also id.* at § 333.20975 (authorizing MDCH to promulgate rules). The MDCH must approve or reject an application within six months of its receipt. *Id.* at § 333.20935(1). If the application is merely incomplete, the MDCH must notify the applicant of the deficiency within thirty days. *Id.* at § 333.20935(2). The MDCH will only approve an application "signed by the medical director responsible for the service area . . . [t]he medical director signature shall serve as confirmation that the medical control authority intends to provide medical control to the life support agency." Mich.

Admin. Code r.§ 325.22111(3); *see id.* § 325.22205(2) ("[M]edical director's signature on . . . application for licensure . . . affirms that the medical control authority intends to provide medical control to the life support agency."). The rules require the following process when a medical director will not certify an application:

> If the medical director refuses to sign the life support agency application for licensure or relicensure, then the medical director shall notify the [MDCH] in writing, within 5 business days, providing justification for denial. Refusal of a medical director to sign a life support agency application shall result in denial justification review by the [MDCH].

*Id.* § 325.22205(2).

Likewise, in the event that a medical control authority institutes disciplinary action against a licensed ambulance provider, notice to the MDCH is also required. Mich. Admin. Code r.§ 325.22126(2). Consequently, section 325.22126(4-5) establishes an appellate procedure for the ambulance provider to challenge the decision. The ambulance provider is entitled to a review of the decision by the medical control authority, the Statewide Committee, and eventually the MDCH. *Id.* In the event the MDCH affirms the disciplinary action, it must provide a hearing consistent with the Administrative Procedures Act, Mich. Comp. Laws § 24.271, *et seq*. *Id.*

Pursuant to the authority established in the Act, the MDCH currently divides the state into approximately sixty-six geographical areas for individual medical control authorities to locally oversee emergency services. NMMCA is the medical control authority that serves Alpena and Alcona counties, and parts of Montmorency and Presque Isle counties. TAS is not currently licensed to operate in NMMCA geographical area. Defendants emphasize that the MDCH issues licenses, while medical control authorities only certify applications. Dkt. # 13 at 12.

B

As introduced above, the interpretation of the Act concerning licensure sparked the dispute. While the parties pleadings have not identified a specific statutory provision that the MDCH's interpretation is grounded on, it appears that the MDCH interpreted the Act to require an ambulance operator to be licensed by a medical control authority where an inter-facility transfer begins or terminates. The parties furnished a September 17, 2007 memorandum from the MDCH to the medical control authorities, which concludes that the MDCH can not issue a license to an ambulance provider solely authorizing inter-facility transfers. *Id.* at 10. Consequently, a medical control authority "do[es] not have the authority to limit an ambulance operations application request for licensure for the purpose of interfacility (sic) transfers only." *Id.*

On September 7, 2008, the MDCH held a seminar to provide an "update" of the applicable rules and regulations. *See* dkt. # 13-5 at 3. A slide from the presentation provides the following interpretation:

- Cannot license an ambulance operation for the purpose of interfacility (sic) transfer only.

- An ambulance operation that chooses to conduct interfacility (sic) transfers can only do so if the transfer begins or ends within their approved [medical control authority].

*Id.* at 6. The presentation emphasizes two requirements contained in the statutory scheme. First, ambulance licensure is based "upon a geographic service area." Dkt. # 17-5 at 2. Second, the Act requires that a licensed ambulance operator have a vehicle available at all times to respond to an emergency within that geographic area. *Id.*; see 20921(1)(a) Apparently, the MDCH interpreted these two requirements of the Act to be in conflict with the practice of issuing licenses for the limited purpose of inter-facility transfers. Consequently, the MDCH concluded that it could not issue limited purpose licenses. Dkt. # 13-5 at 9 ("Accordingly, it is the position of the [MDCH] that

it may only license ambulance operations in accordance with [the Act]. And, there is no provision in [the Act] or applicable administrative rules which would authorize the department to license an ambulance operation for interfacility (sic) transfers.).

Thereafter, the NMMCA Director issued a memorandum addressing the interpretation as follows:

> The [MDCH] – EMS Division recently issued a clarification of the statute which regulates the licensing of emergency medical services (EMS) for the purpose of providing interfacility (sic) transports of patients. The [MDCH] has made it very clear that an ambulance service cannot conduct an interfacility (sic) transport of a patient that does not begin or end within that agency's medical control authority. As a result, [TAS] has been advised by [Otsego County Medical Control Authority] that they are in violation of the Public Health Code if they accept an interfacility transport of a patient out of Alpena Regional Medical Center.

Dkt. # 13-7 at 2. While the exhibits nor the pleadings explain the specific statutory provisions that the interpretation is based on, it appears that the MDCH's interpretation relies on the absence of a provision permitting the licensure of inter-facility transfers. *See* dkt. # 13-5 at 7-9 (citing numerous provisions from the Act, but emphasizing the absence of a provision allowing licenses for a limited purpose); *see also id.* at 4 (requesting legal justification for interpretation). In any event, MDCH's interpretation obstructed TAS's ability to perform certain inter-facility transfers.

C

At the status conference, the parties represented that NMMCA agreed to certify a limited license that would permit TAS to continue to conduct inter-facility transfers to one facility within NMMCA's jurisdiction that TAS had traditionally serviced. TAS prepared an application for licensure to be submitted to MDCH. Apparently, the NMMCA Medical Director signed the application, providing the necessary certification for TAS to submit the application to the MDCH. The application itself provided a section that indicated the "geographical service area," requesting

the "county" that the license was effective. TAS indicated the county to be Montmorency. The NMMCA Director contends that NMMCA agreed to certify the single facility and that TAS should have completed the box with the name of the facility only. According to Plaintiffs, the NMMCA Medical Director certified the application before TAS completed the entire form.

On July 21, 2008, the NMMCA Director sent an e-mail to a representative at the MDCH requesting that it not process TAS's application. The e-mail stated as follows:

> On behalf of NMMCA and at the direction of the Alpena Regional Medical Center Chief Operating Officer, I am requesting that you place a hold on the approval of any changes to the [TAS] Part A portions of the MCA. Our MCA executive board is scheduled to meet tomorrow at 2pm [sic] on this issue. I will email [sic] you with the results immediately following that meeting.
>
> Thank you in advance for your patience in this matter and the assistance you have provided thus far. We have serious concerns about both the quality of care being provided and whether or not there is a violation of statute and rules.

On July 22, 2008, the NMMCA Director sent a second e-mail to the same MDCH representative, providing in part as follows:

> I have returned from a meeting with our medical director, Dr. Tad Farmer, and the Alpena Regional Medical Center Chief Operations Officer, Al Moe, where we discussed the issue of licensing [TAS] to operate within out MCA. It was decided that we do NOT wish to permit [TAS] to operate within our MCA at this time. A letter to [TAS] detailing our rationale is being drafted and a copy of said letter will be forwarded to your office . . .

On July 24, 2008, a representative of the MDCH sent a facsimile copy of the application to NMMCA Medical Director with the following note, "Per your request. Here is part 1 [of the application] for Montmorency [County]. I won't process their [application] until this is straightened out." Plaintiffs allege that the licensure application remains unresolved and that Defendants have not provided any official notice concerning the application.

D

-7-

In any event, two outstanding motions remain before the Court. First, Plaintiffs still seek a temporary injunction. The motion for a preliminary injunction shall be set for hearing to permit Plaintiffs an opportunity to advance proofs justifying the issuance of a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a). Prior to the hearing, however, the parties shall file supplemental briefing indicating any witnesses they intend to call, the anticipated subject of each witness's testimony, and the amount of time each witness shall testify. Second, Defendants filed a motion to dismiss, and in the alternative, for summary judgment, which will be set for hearing

Accordingly, it is **ORDERED** that Plaintiffs' motion for a preliminary injunction [Dkt. # 2] is **HELD IN ABEYANCE**. The parties shall appear for an evidentiary hearing on Plaintiffs' motion for a preliminary injunction [Dkt. # 2] and Defendants' motion to dismiss [Dkt. # 17] on **February 23, 2009 at 9:30 a.m.**

It is further **ORDERED** that Plaintiffs shall submit a supplemental brief on or before **January 6, 2009**. Defendants shall file a supplemental brief indicating any witnesses they intend to call for rebuttal purposes on or before **January 20, 2009**. The briefs shall identify witnesses to be called, the anticipated substance of testimony, and the estimated time necessary to examine each witness.

                                               s/Thomas L. Ludington
                                               THOMAS L. LUDINGTON
                                               United States District Judge

Dated: December 23, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 23, 2008.

                                                s/Tracy A. Jacobs
                                                TRACY A. JACOBS